**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                          Case No. 09-20052

ELIJAH SMITH,                      Honorable Arthur J. Tarnow

       Defendant.
_____/

**OPINION AND ORDER ON DEFENDANT'S MOTION TO SUPPRESS [21]**

Now before the court is Defendant's Motion to Suppress Evidence and Request for an Evidentiary Hearing [21].

**FACTUAL AND PROCEDURAL HISTORY**

Defendant was charged with conspiracy to possess with intent to distribute a controlled substance and possession with intent to distribute a controlled substance. On July 12, 2006, police in Welasco, Texas were made aware of a suspicious parcel being sent from a shipping and packing center. The parcel was addressed to Jason Christie, 19975 Hartwell, Detroit, Michigan 48235. After it was opened,[1] a powdery substance was found. Investigator Sifuentes of the Welasco Police Department field tested the substance and it tested positive for narcotics. Plans were then made to intercept the parcel at a FedEx facility in Detroit and to perform a controlled delivery

---

[1] The customer slip the shipping center gave to the customer indicated that parcels may be opened at any time.

at the Detroit address.

After the parcel was seized from the FedEx facility in Detroit on July 13, 2006 by SA Ross Roel and TFA Jim Meade, a field test was done and the substance found inside tested positive for heroin. That same day, a Wayne County judge signed a search warrant for the residence at 19975 Hartwell.

SA Roel and TFA Meade installed a transmitter in the parcel that was designed to alert agents to the movement and opening of the package. Surveillance was also set up to monitor the location and video record the controlled delivery. At approximately 11:54 a.m. on July 13, TFA Lindsey Pace, dressed as a FedEx courier, arrived at 19975 Hartwell and approached the door. An individual, later identified (after he was detained) as Defendant Elijah Smith, opened the door and signed for the package with an unreadable signature. TFA Pace then departed.

At approximately 11:57 a.m., Smith was observed opening the front door of the residence and looking north and south on Hartwell. He then returned inside and shut the door. At approximately 11:59 a.m., Smith left the residence not carrying anything and departed in a vehicle. He headed southbound on Hartwell and agents then moved in to block his vehicle. Smith then switched the vehicle into reverse and was heading northbound when agents approached from the north and blocked his vehicle. According to the Report of Investigation, agents identified themselves as police/DEA and secured Smith in handcuffs. *See* Government's Combined Response, Exhibit 2

2

at ¶17. They then recovered the parcel, which was partially visible in Smith's waistband, from his shorts. *Id.* at ¶17.

After being indicted, Defendant filed the instant motion on November 20, 2009. The government filed its response [25] on December 18, 2009. On December 22, the court held a hearing on Defendant's motion at which SA Roel testified. Following argument, the court took the motion under advisement and ordered the parties to submit supplemental briefs by January 15, 2009. Defendant filed a brief [29] on January 15, 2009. The government did not submit a supplemental brief.

## **DISCUSSION**

Defendant initially argued in his motion to suppress that he "was under arrest from the inception of his encounter with officers." *See* Defendant's Motion to Suppress at 2. He maintained that the arrest and search that occurred were not supported by probable cause that he was engaged in criminal activity. According to Defendant, the only information the officers had regarding him was that he signed for the package. The electronic monitoring device in the parcel had not been triggered. Thus, when he exited the residence, there was no basis for the police to attempt to stop him.

In its response, the government argued that based upon the information obtained in the investigation of the Hartwell address, there was probable cause for authorities

3

to believe Defendant's vehicle contained contraband. The government pointed to various facts authorities possessed prior to stopping Defendant, including: looking outside of the front door after receiving the parcel and coming out several minutes later, getting into a vehicle outside of the residence and driving away, and driving in reverse after being approached by a law enforcement vehicle.

At the hearing on December 22, 2009, the government argued at one point that the stop of the car was not an arrest, but rather was an investigative stop pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), and thus only required reasonable suspicion of a drug transaction rather than probable cause. However, the government went on to maintain that authorities had more than articulable reasonable suspicion; there was also probable cause to believe that Defendant had the parcel. Ultimately, the government suggested that authorities initially had reasonable suspicion of criminal activity to stop and question Defendant when he exited the residence, but lacked probable cause to search him.[2] That changed after Defendant attempted to flee authorities by driving in reverse, as officers then had probable cause to justify a search.

The issue this court is thus faced with is whether or not the stop of Defendant

---

[2] SA Roel also testified that he made the decision that Defendant, and anyone leaving the residence, was to be detained in order to prevent the package from leaving the area. Roel also stated that when Defendant left the residence, Roel ordered that he be stopped and detained but not searched. This is consistent with counsel's assertion that probable cause was lacking when authorities initially made the decision to stop Defendant.

after he exited the residence can be justified under the Fourth Amendment. At the hearing, the government acknowledged that the stop was not initially based on a finding of probable cause but rather reasonable suspicion that criminal activity was afoot. The court must now determine whether reasonable suspicion existed when the officers initiated their stop of Smith.[3]

An investigatory stop of an individual is permissible under the Fourth Amendment:

> if law enforcement officers had a particularized and objective basis for suspecting the particular person stopped of criminal activity, and were aware of specific and articulable facts which gave rise to reasonable suspicion. Reasonable suspicion does not materialize merely because a person looked suspicious and was in a high drug problem area.

*See United States v. Keith*, 559 F.3d 499, 503 (6th Cir. 2009) (citations and internal quotation marks omitted). In determining the reasonableness of the officer's conduct, "due weight must be given, not to his inchoate and unparticularized suspicion, or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *See Terry*, 392 U.S. at 27; *see also Keith*, 559 F.3d at 503. The court "consider[s] the totality of the circumstances to determine the reasonableness of the stop." *See Keith,* 559 F.3d at 503.

In *Keith*, two police officers, who were standing on a corner near multiple

---

[3] If there were no reasonable suspicion established to support the initiation of the stop, then Defendant's conduct following the authorities attempt to stop him (in this case, driving his car in reverse) cannot be used to establish probable cause. The court does not need to address the issue of probable cause if reasonable suspicion is found to be lacking.

police cars with their lights flashing, were on patrol at approximately 2:00 a.m. in an area that included a liquor store with a drive-through window. *Id.* at 501. The officers knew that the store sold not only legal items but items used to smoke crack cocaine. *Id.* at 501. One of the officers considered the store and its parking lot to be a high drug trafficking crime area. *Id.* at 501. The officers observed a man, Crawford, approach a car driven by defendant Keith that pulled up to the drive-through window. *Id.* at 501. At one point while briefly sticking his head into the passenger side window to speak to the driver, Crawford looked back at the officers. *Id.* at 501. The car then drove along the side of the store, where the officers were unable to observe it from their location. *Id.* at 501-502. Crawford also walked in the same direction, looked in the officers' direction again, and fell out of sight. *Id.* at 502. The officers acknowledged they did not know if Crawford had any contact with the car on the side of the building but suspected that the parties had met to engage in a drug deal or exchange alcohol that had been bought for minors. *Id.* at 502.

When the car pulled out from the side of the building and drove into the street, one of the officers followed and stopped the car "based solely on his suspicion that some kind of criminal activity had occurred in the few seconds that the officers had lost sight of Keith and Crawford...." *Id.* at 502. The officer ran a check on Keith's license and discovered it was suspended. *Id.* at 502. He also observed "what appeared to be marijuana in plain sight in the car" and found a gun upon searching the

6

vehicle, as well as cocaine after doing a body cavity search. *Id*. at 502.[4]

After Keith was indicted on numerous drug and firearms violations, he filed a motion to suppress that alleged that the officer "did not have reasonable suspicion to believe that he had engaged in criminal activity" and thus improperly stopped him. *Id*. at 502. After the district court denied the motion and defendant appealed, the Sixth Circuit reversed, finding that based upon:

> the totality of the circumstances, this sequence of events was insufficient to provide the officers with reasonable suspicion that a crime had been committed. Without more information, they were not justified in stopping Keith or Crawford. That the two men greeted each other in a 'bad' neighborhood late at night, glanced toward flashing police lights, and then spent several seconds, during which they may or may not have had any contact, in a parking area beside an open, operating liquor store– a parking area that the police, from their vantage point, could not see– was not enough, under the *Fourth Amendment*, to justify the intrusion of a police stop [under *Terry*].

*Id.* at 506-507.

The facts in the instant case also compel a finding that law enforcement lacked "reasonable suspicion" to stop Defendant. *Terry* requires more than "unparticularized" suspicion to stop an individual. Here, SA Roel testified that Smith was surveilled accepting the parcel containing drugs. However, agents did not know who he was when he signed for it and only learned of his identity after he was

---

[4] The other officer "conducted a separate stop of Crawford, found nothing suspicious on him, and allowed him to go." *See Keith*, 559 F.3d at 502.

7

stopped. When Defendant signed for the package, his signature was illegible. Authorities did not have a basis for concluding that he was the intended recipient of the parcel. Moreover, SA Roel testified that he was planning on stopping anybody that was seen leaving the address, whether on foot or by car, until the parcel was found.

Prior to exiting the residence, Smith looked out of the door briefly at approximately 11:57 a.m. and looked up and down the street. *See* Government's Combined Response, Exhibit 2 at ¶17. He then went back inside and left the residence at approximately 11:59 a.m. *Id*. This conduct, even when combined with the fact that Smith signed for the package, is not enough to establish reasonable suspicion. Similar to the defendant in *Keith*, Smith's glance down the street could have been mere curiosity.[5] *See Keith*, 559 F.3d at 505.

Authorities were also aware, as per SA Roel's testimony, that there was at least one other individual in the home prior to Smith exiting. Certainly, that person could have been in possession of the package. Furthermore, SA Roel indicated that the motion device, which tracked the package's movement and could indicate whether it had been opened, was not activated prior to Smith exiting. Thus, SA Roel

---

[5] In actuality, the defendant's glance in *Keith*, which was toward the officers' police cars with flashing lights, is arguably more suspicious conduct than looking down a street with no visible police cars, as the argument could be made that the defendant in *Keith* was concerned about the presence of law enforcement because he was planning on engaging in illegal activity.

acknowledged in his testimony that the parcel could very well still have been inside the residence.

The government did not offer any testimony or evidence that upon exiting the residence, Smith engaged in any type of suspicious behavior. Rather, he left the residence, entered his car, and drove away. Smith was not carrying anything when he left the residence and there is no testimony that authorities, who were surveilling the area, were able to see any item protruding out of Defendant's clothes. SA Roel's testimony that *anybody* who left the residence would be stopped does not comport with the requirement that suspicion be "particularized" in order to be considered reasonable.

The only grounds the government offers as providing justification for establishing reasonable suspicion prior to authorities initiating the stop is that Defendant signed for the parcel and very briefly looked up and down the street shortly after receiving it.[6] These facts are no stronger than those relied upon by the officers in *Keith*.

While the government cites Smith's conduct after agents attempted to stop him

---

[6] The government's position is thus that reasonable suspicion existed prior to Defendant getting into his car and driving away from the residence. SA Roel testified that authorities were going to stop and detain anyone who exited the residence. Therefore, it is unclear why Defendant was not stopped prior to getting into a vehicle and attempting to drive away.

as grounds for arresting him,[7] his arrest cannot be justified if authorities lacked a proper basis under the Fourth Amendment for attempting to stop him in the first place. Based upon the totality of the circumstances, the facts presented here are insufficient to establish reasonable suspicion that Smith had committed a crime. Thus, the stop of Smith was not supported by the Fourth Amendment and the evidence seized must be suppressed.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion to Suppress [21] is **GRANTED.**

**SO ORDERED.**

S/ARTHUR J. TARNOW
Arthur J. Tarnow
United States District Judge

Dated: February 12, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 12, 2010, by electronic and/or ordinary mail.

S/LISA M. WARE
Case Manager

---

[7] There is no testimony that prior to the initiation of the stop, Defendant was violating any traffic laws. Rather, the sole basis for the stop as per SA Roel's testimony was to prevent any evidence from leaving the area of 19975 Hartwell. The government's position at the hearing appeared to be that probable cause developed after Smith drove his car in reverse when authorities initiated their stop of him.